IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD COLLINS,<br>Petitioner,<br><br>v.<br><br>DAVID DIGUGLIELMO, *et al.*,<br>Respondents. | :<br>:<br>:  CIVIL ACTION<br>:<br>:  NO. 10-851<br>:<br>:<br>: |

MEMORANDUM OPINION

RUFE, J.                                                                                                                   JULY 1, 2013

Before the Court are Petitioner's Objections to the Report and Recommendation ("R&R") filed by United States Magistrate Judge Lynne Sitarski. Petitioner objects to Judge Sitarski's resolution of his claims involving the exclusion of a photograph in his underlying criminal trial. For the reasons that follow, the Court will overrule Petitioner's Objections, approve and adopt the R&R, and dismiss the Petition.

I.     BACKGROUND[1]

On October 21, 1994, a jury sitting in the Philadelphia County Court of Common Pleas found Petitioner Ronald Collins guilty of two counts of first degree murder, and one count each of aggravated assault, possession of an instrument of a crime, and recklessly endangering another person.[2] After completing post-conviction review in state court,[3] Petitioner filed a *pro se*

---

[1] Because the procedural posture in this case is long and complex, and because much of the history is not material to the Court's analysis, the Court provides herein only the background necessary to provide context for its decision.

[2] Commonwealth v. Collins, 888 A.2d 564, 567 (Pa. 2005). The Honorable Eugene Clark, Jr. presided over Petitioner's trial.

[3] Though not material to the analysis here, the Court notes that Petitioner achieved some success in his post-conviction proceedings in state court. Specifically, Petitioner was initially sentenced to death. This sentence was affirmed on appeal, but the PCRA court granted a new penalty phase. Commonwealth v. Collins, June Term, 1992 No. 1477, at 2 (Pa. Ct. Com. Pl. Nov. 22, 2002). The PCRA Court's decision was affirmed on appeal and following a new sentencing proceeding before the Honorable Jeffrey P. Minehart, Petitioner was resentenced to consecutive terms of life imprisonment for the first degree murder convictions. Commonwealth v. Collins, No. CP-51-CRF-0614771-1992 (Pa. Ct. Com. Pl. May 11, 2009).

Petition for Writ of Habeas Corpus and a motion for appointment of counsel in this Court.[4] The Court granted the motion and appointed counsel, who filed an Amended Petition.[5]

Petitioner was dissatisfied with habeas counsel's failure to include certain claims in the Amended Petition; he asserted that counsel was not adequately representing his interests and requested that the Court appoint Michael Wiseman (his PCRA counsel) to represent him.[6] Thereafter, Mr. Wiseman filed a Motion for Appointment of Substitute Counsel on Petitioner's behalf.[7] After a hearing, the Court granted the motion and appointed Mr. Wiseman to represent Petitioner.[8] The Court then ordered newly appointed counsel to file any amendments to the Amended Petition or a supplemental petition within 60 days.[9] Counsel filed a motion to amend the Amended Petition, with a proposed Second Amended Petition attached.[10]

The Second Amended Petition asserts the following claims:

> (I) The state trial court violated Pennsylvania evidence law and Petitioner's right to present a defense secured by the Due Process Clause, when it refused to admit a photograph of Petitioner's co-defendant holding the murder weapon. The Commonwealth also violated Due Process, and Brady v. Maryland, when it failed to disclose information to the defense that would have resulted in the admission of the photo. State court trial and direct appeal counsel were ineffective for failing to litigate this issue at trial, post-verdict motions[,] and on direct appeal.
> (II) The improper admission of hearsay statements violated Petitioner's Sixth Amendment right to confrontation.

---

[4] Doc. Nos. 1, 2.

[5] Doc. Nos. 3, 5, 7, 11.

[6] Doc. Nos. 13, 17.

[7] Doc. No. 18.

[8] Doc. Nos. 21, 23, 24, 29.

[9] Doc. No. 25.

[10] Doc. No. 33.

(III) Petitioner's right to Due Process of Law was violated by the misjoinder of offenses.[11]

Respondents opposed Petitioner's request for leave to file a Second Amended Petition.[12] The Magistrate Judge thereafter ordered that Respondents file a supplemental response, addressing each of the claims in the Second Amended Petition, and Respondents timely filed that response.[13] Without making a specific recommendation as to whether the motion to amend should be granted, but finding that the amendment relates back to the original petition and was therefore not untimely, the Magistrate Judge issued the R&R, recommending that the claims in the Second Amended Petition be denied.[14]

### A. Facts Relevant to Petitioner's Objections

The following facts were set forth by the Supreme Court of Pennsylvania:

> The events in this case revolve around a second floor apartment at 643 North 60th Street in West Philadelphia, where drugs were regularly sold and consumed. Marc Sisco maintained the apartment and managed the drug trade that occurred on the premises. Marc's brother, David Sisco, also lived in the apartment. [Petitioner] was a regular visitor to the apartment and often sold cocaine from that location. [Petitioner's] associates, Shawn Wilson and Dawn Anderson, also frequented the apartment.
>
> Early in the morning on March 28, 1992, [Petitioner] and Marc Sisco were in the apartment and began arguing. [Petitioner] pointed a gun at Marc Sisco and shot him five times. When police arrived at the apartment, they found Marc Sisco lying on the bathroom floor. Medical personnel transported him to a hospital where he recovered from his wounds. Police recovered one bullet from the bathroom floor in the apartment and two bullets from Marc Sisco's body at the hospital. Two bullets remain inside him.[15] After the shooting,

---

[11] Doc. No. 33, Ex. A.

[12] Doc. No. 34.

[13] Doc. No. 38.

[14] Doc. No. 16, 48.

[15] The shooting of Marc Sisco was not joined for trial with the David Sisco/Dawn Anderson homicide. However, evidence of the shooting was introduced as a prior bad act relevant to Petitioner's motive and identity. The Commonwealth's theory was that Petitioner shot David several days after he had shot David's brother, Marc, because David was a witness to Marc's shooting and was assisting the police in their investigation. Petition for

3

David Sisco assisted the police in their investigation. He discussed the incident with a detective at the police station and accompanied the detective to the apartment, where he described how the shooting occurred.

. . .

[About a week later, Petitioner accused a woman of stealing drug money from him. The woman denied the accusation and stated that Dawn Anderson had stolen the money. Three days later, at approximately 8:00 p.m. on April 5, 1992, while leaving a friend's house for work "around the corner" (Marc Sisco's apartment), Anderson] told [a friend] that she would bring some drugs back "if they don't kill me" [and stated] that "they shot her in the elbow one time and they said they were going to shoot her in the head." [Anderson's friend testified at trial that she] understood Anderson's reference to "they" to mean [Petitioner] and Wilson.

Later that evening, Gwendolyn Oliver accompanied [Petitioner] and Shawn Wilson to Marc Sisco's apartment. After talking and drinking beer for a short time in the apartment, Oliver, [Petitioner] and Wilson decided to go to a hotel. Oliver left the apartment to make a call from a telephone booth before going to the hotel. While at the phone booth, Oliver heard approximately five gun shots come from the apartment. [Petitioner] then ran out of the apartment, called to Oliver, and hailed a cab. Wilson exited the apartment a few moments later and joined [Petitioner] and Oliver in the cab.

While riding in the cab, [Petitioner] boasted that he had "served" someone, which Oliver understood to mean that he had harmed someone. Wilson responded that [Petitioner] had given them what they deserved, and the two men exchanged a "high-five." [Petitioner] then asked Wilson if he had seen "the blood squirting out" and showed blood stains on his shirt sleeve to Wilson. The trio [then] stopped at a [friend's house where Petitioner left his gun] for safekeeping. . . .

On the morning of April 6, 1992, police arrived at Marc Sisco's apartment and discovered David Sisco unconscious and covered with blood on the bed. He had been shot approximately seven times and died at the hospital a few hours later. In another room, police found Dawn Anderson unconscious and covered with blood on a bed. She had been shot once in the head and died the following day. Police recovered two bullets from David Sisco's body, one bullet from Anderson's head and several bullets from the apartment. Ballistics evidence showed that a single firearm had fired [the bullets involved in the David Sisco and Dawn Anderson murders, as well as in the Marc Sisco assault].[16]

---

Habeas Corpus Relief and Consolidated Memorandum of Law, Commonwealth v. Collins, June Term, 1992 Nos. 1477-1486, May Term, 1992 Nos. 2253-2256, at 4 n.5 (Pa. Ct. Com. Pl.).

[16] Commonwealth v. Collins, 703 A.2d 418, 420-22 (Pa. 1997). More specifically, "[b]allistics evidence showed that a single firearm had fired the two bullets recovered from David Sisco's body, the bullet recovered from Anderson's head, the bullets found in the apartment after David Sisco and Anderson were shot, the bullet found in

4

Sean Wilson was tried separately as a co-conspirator and accomplice to these crimes.[17] During his trial, Petitioner attempted to establish that Wilson was the shooter. To this end, Petitioner sought to introduce an undated photograph found with Dawn Anderson's body, which showed Wilson holding the murder weapon.[18] The prosecutor immediately requested a sidebar conference and the following discussion took place:

> Mr. Cameron: Just to protect the record, Mr. Drost wants to show a single photographer [sic] of Shawn Wilson to the jury. To some extent, that may impact that defendant's right to the extent you are showing a suggestive photo. I don't know if there are any I.D. issues. Mr. Wilson has not been tried. He does not have counsel here.
>
> Mr. Drost: Mr. Wilson will have an issue to bring up at a Motion to Suppress identification should he wish one.
>
> The Court: What does of a picture of Shawn Wilson have to do with this testimony?
>
> Mr. Drost: Picture of Shawn Wilson – initially . . .
>
> The Court: What does Shawn Wilson have to do with his testimony? He said Shawn Wilson was not out there when the shooting took place, he says Shawn Wilson was in the apartment.
>
> Mr. Drost: And the picture is with Shawn Wilson with a gun, which appears to be a revolver, which appears to be blue steel, which appears to be approximately four inches in length.
>
> The Court: So you want to imply that it was Shawn Wilson who shot him and not this defendant?
>
> Mr. Drost: And it also goes – the Commonwealth is bringing up the issue of identity as Mr. Collins being the shooter.

---

the bathroom after Marc Sisco was shot on March 28, 1992, and at least one of the two bullets recovered from Marc Sisco's body. The other bullet recovered from Marc Sisco's body may have come from the same gun, but positive identification was not possible because the bullet became deformed after it was fired." Id. at 421.

[17] See Commonwealth v. Wilson, CP-51-CR-0614732-1992.

[18] 10/18/94 Trial Tr. 43.

5

| | |
|---|---|
| The Court: | It doesn't make any difference about Mr. Collins being the shooter, the identity is going to be, so I understand, that the gun which fired the bullets that hit Marc Sisco was also the gun that fired the bullets that hit David Sisco, so it doesn't make any difference what size the gun is. |
| Mr. Drost: | And they are going to argue it was my client who did the shooting of Miss Anderson and Mr. Sisco. |
| Mr. Cameron: | That's correct. |
| Mr. Drost: | And they are going to use this evidence to make that inference and I wish to bring in the fact that . . . |
| The Court: | I understand what you are saying. What is the relevance of Wilson with a gun, unless you can have them localiz [sic] this as to time when the picture was taken? |
| Mr. Drost: | I don't know for sure when the picture was taken. I know that when interviewed by the police this witness identified that photograph as being – |
| Mr. Cameron: | – a picture of Shawn Wilson. |
| Mr. Drost: | – a picture of Shawn Wilson. |
| The Court: | There is no problem with Shawn Wilson. You are not interested in who it was, you are interested in the fact there was another person in the apartment who had a gun. Now, if you can't localize the time that this picture was taken, of Shawn Wilson with a gun, how is it relevant? |
| Mr. Drost: | There is a date on the photograph, but, is it 12/91? |
| Mr. Cameron: | I'm not sure. May I get it, Your Honor? |
| The Court: | All right. |
| Mr. Cameron: | Thank you. |
| | That photograph doesn't have a date. It's the one that David Sisco gave to the police that has got a date on it. |
| Mr. Drost: | It doesn't have a date. |

6

| | |
|---|---|
| The Court: | I don't see the relevancy of Shawn Wilson with a gun concerning this shooting unless you have a picture of Shawn Wilson with a gun approximately at that time. Because that is what you are trying to establish, that Shawn Wilson had a gun in that same time frame, and if you cannot identify a picture as being in that same time frame, how is it relevant? |
| Mr. Drost: | At this point, I cannot establish that for the Court's satisfaction. Given what I believe the Court's ruling is, then, I would ask that this witness be made available throughout the trial should I be able to establish through other evidence the time frame. |
| The Court: | I have no problem with that. |
| Mr. Cameron: | Well, the Commonwealth will have a little bit of a problem with that because we're putting him up at a hotel. He no longer lives in the area and I only have approval to keep him at a hotel two nights and he has to go back to the opposite end of the state where he now lives. I'm going to have to get permission to pay for the rest of the week. I'll have to try to make arrangements over lunch. I don't know if it is going to get approved or not. |
| The Court: | You try and see what you can do. |
| Mr. Cameron: | Yes, sir.[19] |

Petitioner's trial counsel did not question Marc Sisco about the photograph to try to determine its date.

During Shawn Wilson's trial (which occurred two months after Petitioner was found guilty, but before he was sentenced), the Government sought to introduce the same photograph and was permitted to do so.[20] Marc Sisco testified that the photograph was taken about five or

---

[19] 10/18/94 Trial Tr. 44-47.

[20] Pet'r's Second Am. Habeas Pet. at 14-16 (Doc. No. 33-3).

7

six months before the April 1992 homicides and stated that he believed that the gun Wilson was holding in the picture belonged to Petitioner.[21]

### B. Petitioner's Objections

The R&R recommends that the Court deny the Second Amended Petition as to each claim. In his Objections, Petitioner challenges this conclusion with respect to his first claim only.[22] He asserts that the Magistrate Judge "erred in multiple respects in her resolution of the photo claim."[23] According to Petitioner, trial counsel was ineffective for failing to question Marc Sisco in a manner that would have led to admission of the photograph, the prosecutor committed a due process violation by failing to disclose the date of the photograph, and the trial court erred by excluding the photograph thereby depriving Petition of his right to present a defense.

## II. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[24] "a district court shall entertain an application for writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[25] "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court

---

[21] Id. at 14-15 (quoting 12/8/1994 Wilson Trial Tr. 26-29).

[22] See Doc. No. 33, Ex A ("(I) The state trial court violated Pennsylvania evidence law and Petitioner's right to present a defense secured by the Due Process Clause, when it refused to admit a photograph of Petitioner's co-defendant holding the murder weapon. The Commonwealth also violated Due Process, and Brady v. Maryland, when it failed to disclose information to the defense that would have resulted in the admission of the photo. State court trial and direct appeal counsel were ineffective for failing to litigate this issue at trial, post-verdict motions[,] and on direct appeal.").

[23] Objections (Doc. No. 51) at 2.

[24] 28 U.S.C. § 2254.

[25] 28 U.S.C. § 2254(a).

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[26]

Where, as here, the habeas petition is referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), a district court conducts a *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[27]

### III. DISCUSSION

#### A. The Motion to Amend

As stated, the R&R does not specifically recommend that Petitioner's Motion to Amend be granted; however, the Magistrate Judge found that the Second Amended Petition was timely because the amendment relates back to the original *pro se* petition, and reviewed the claims as contained in the Second Amended Petition.[28] Neither party objects to treatment of the Second Amended Petition as the operable document,[29] and the Court does not find error in it being treated as such. Accordingly, the Motion to Amend will be granted.

---

[26] 28 U.S.C. § 2254(d).

[27] 28 U.S.C. § 636(b)(1).

[28] See Report and Recommendation ("R&R") [Doc. No. 48] at 12-16.

[29] In a footnote in their response to Petitioner's Objections, Respondents state that they maintain their position that leave to amend should be denied as futile. Doc. No. 54 at 1 n.1. Because the Court agrees with the

9

B.  **Petitioner's Objections**

Petitioner argues that "[t]he trial court's refusal to permit admission of the Shawn Wilson photo (despite indisputable *state* law permitting the admission of such photos), trial counsel's ineffective failure to obtain the date of the photo from the witness, and the prosecutor's withholding of the date, deprived Petitioner of his fundamental right to a fair trial and to present his defense that Shawn Wilson was the killer."[30]  The Court will address the asserted errors as to the trial court, trial counsel, and the prosecutor separately.

1.  Trial Court Error

The Magistrate Judge found that the trial court's exclusion of the photograph of Wilson did not deprive Petitioner of his due process right to present a defense.  According to Petitioner, this conclusion was in error.  Petitioner contends that the trial judge deprived him of his right to present the defense that Wilson was the shooter by prohibiting him from introducing the photograph.  The Court disagrees.

While "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," the United States Supreme Court has acknowledged its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts," and has stated that the Constitution gives trial judges "'wide latitude' to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"[31]  "Evidence is relevant if 'it has any tendency to make a

---

R&R that the amendment relates back to the initial *pro se* petition, the Court will grant leave to amend despite the fact that that the Second Amended Petition ultimately fails on its merits.

[30] Doc. No. 33-3 at 34 (emphasis added).

[31] Crane v. Kentucky, 476 U.S. 683, 689-90 (1986) (citation and quotation marks omitted) (omission and alteration in original).

10

fact more or less probable than it would be without the evidence,' and if 'the fact is of consequence in determining the action.'"[32]

Here, the trial judge excluded the photograph because Petitioner could not establish that it was taken near the time of the murders. Specifically, the trial judge stated:

> The Court: I don't see the relevancy of Shawn Wilson with a gun concerning this shooting unless you have a picture of Shawn Wilson with a gun approximately at that time. Because that is what you are trying to establish, that Shawn Wilson had a gun in that same time frame, and if you cannot identify a picture as being in that same time frame, how is it relevant?
>
> Mr. Drost: At this point, I cannot establish that for the Court's satisfaction.[33]

The Pennsylvania Supreme Court found that this decision was reasonable "since a temporal relationship between the photograph and the murders would lend some credence to the inference that Appellant was attempting to establish—that Wilson was the shooter."[34] The court further found: "Trial counsel, however, did not establish the date of the photograph and therefore, the trial court did not err in excluding the proffered evidence. Accordingly, [Petitioner] cannot establish that his claim regarding trial counsel's failure to raise this issue on appeal had arguable merit, and Appellant is not entitled to relief on this claim."[35]

The Court agrees with the R&R that this holding was not "contrary to" nor did it involve an "unreasonable application of, clearly established federal law."[36] Without knowing the date

---

[32] United States v. Weston, No. 12-1310, 2013 WL 1867431, at *3 (3d Cir. May 6, 2013) (quoting Fed. R. Evid. 401(a) and (b)).

[33] 10/18/1994 Trial Tr. 47.

[34] Collins, 888 A.2d at 577.

[35] Id.

[36] 28 U.S.C. § 2254(d)(1).

11

the photograph was taken, the photograph is not necessarily relevant to prove that Wilson possessed the gun at the time of the murders, so as to support an inference that Wilson, rather than Petitioner, was the shooter. Even if an undated photograph were relevant, its exclusion is distinguishable from those cases relied upon by Petitioner where the trial court's exclusion of "critical" evidence had the effect of completely depriving a defendant of the opportunity to present his chosen defense.[37] The trial judge did not prevent Petitioner from presenting his defense using other evidence (through cross examination, for example) and trial counsel did, in fact, argue this defense to the jury.[38]

In sum, the Court finds that the trial court's exclusion of the photograph and the Supreme Court's affirmance of the same was not contrary to, or an unreasonable application of, federal law sufficient to justify the grant of habeas relief. The Court will therefore overrule Petitioner's objection in this regard. To the extent Petitioner contends that the trial court erred under state law in failing to admit the photograph, the Court agrees with the R&R that this claim is non-cognizable on federal habeas review.[39]

---

[37] See, e.g., Chambers v. Mississippi, 410 U.S. 284, 302 (1973) ("We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process.").

[38] 10/20/1994 Trial Tr. 35.

[39] See, e.g., Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence. A federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process violation."). Although Petitioner does not raise a formal objection in this regard, in his Objections, he includes a lengthy footnote about the trial court's exclusion of the photograph, which he asserts is particularly "troubling" in light of the photo's admission at Wilson's trial. Doc. No. 51 at 5 n.3. According to Petitioner, Pennsylvania case law supports his contention that the photograph should have been admitted. However, the cases cited by Petitioner, support admission of the photograph of *Wilson* in *Wilson*'s trial, not in Petitioner's trial. See, e.g., Commonwealth v. Williams, 640 A.2d 1252, 1260 (Pa. 1994) ("A weapon shown to have been in a defendant's possession may properly be admitted into evidence, even though it cannot positively be identified as the weapon used in the commission of a particular crime, if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime. Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence.").

## 2. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test established by the Supreme Court in <u>Strickland v. Washington</u>.[40] Under <u>Strickland</u>, counsel is presumed to have acted reasonably and to have been effective unless a petitioner can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced petitioner.[41] Counsel's performance is only deficient when it is "outside the wide range of professionally competent assistance."[42] Prejudice occurs upon a showing that there is a reasonable possibility that but for counsel's deficient performance the outcome of the underlying proceeding would have been different.[43] For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[44] Similarly, an ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a defendant must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[45]

Petitioner objects to the R&R's conclusion that counsel was not ineffective for failing to question Marc Sisco to ascertain the date of the photo. On PCRA review, the Pennsylvania Supreme Court addressed this claim as follows:

---

[40] 466 U.S. 668 (1984).

[41] <u>Id.</u> at 687.

[42] <u>Id.</u> at 690.

[43] <u>Lewis v. Horn</u>, 581 F.3d 92, 106-07 (3d Cir. 2009).

[44] <u>Singletary v. Blaine</u>, 89 F. App'x 790, 794 (3d Cir. 2004) (citing <u>Moore v. Deputy Comm'r of SCI-Huntingdon</u>, 946 F.2d 236, 245 (3d Cir.1991)).

[45] <u>Strickland,</u> 466 U.S. at 694.

13

> [Petitioner] argues that trial counsel was ineffective for failing to question Mark Sisco as to whether he knew the date this photo was taken. The prejudice [Petitioner] alleges is that he was prevented from presenting his defense that Shawn Wilson committed the murders instead of him. That argument, however, is unavailing, since there was nothing that prevented [Petitioner] from arguing that there was another person in the apartment at the time of the shooting who had a gun. N.T., 10/[19]/1994, at 46. Indeed, at trial, it was established that Shawn Wilson was in the apartment with [Petitioner] at the time of the shootings. N.T., 10/[19]/1994, at 44–48. Accordingly, [Petitioner] cannot establish that he was prejudiced by the trial court's ruling, and this issue fails on that basis alone.[46]

The Magistrate Judge agreed with this conclusion, finding that even assuming trial counsel was deficient, Petitioner did not show that absent the alleged errors, it is reasonably likely that the result would have been different. The Magistrate Judge explained: "[A] photograph of Petitioner's co-actor holding a gun taken approximately six months prior to the shooting is not strong enough evidence to dictate a different result, especially in light of the evidence of Petitioner's guilt."[47] The evidence at trial established that Petitioner shot Marc Sisco after an argument and ballistics evidence showed that the same gun was used to shoot Marc Sisco, David Sisco, and Dawn Anderson.[48] Additionally, as the Magistrate Judge stated:

> Gwendolyn Oliver testified, *inter alia*, that almost immediately after she heard gunshots, Petitioner and Shawn Wilson bragged about seeing blood squirt out and "serving somebody," indicating that they had caused bodily harm to someone. See N.T. 10/19/1994 at 48-50. Gwendolyn Oliver further testified that Petitioner admitted to harming the victims, and that Petitioner had blood on his sleeve. Id. at 50-53. Later, Gwendolyn Oliver testified that Petitioner spoke to a third person (Lonnie Boo) about the "drama," and gave him the gun for safekeeping. Id. at 56-57.[49]

---

[46] Collins, 888 A.2d at 577.

[47] R&R at 24.

[48] See id. (citing 10/18/1994 Trial Tr. 30-32; 167-69).

[49] R&R at 24.

14

The Magistrate Judge concluded: "Based upon the doubly deferential standard of review, as well as the amount of evidence supporting Petitioner's guilt, this Court cannot hold that the state court's denial of this claim based upon a lack of prejudice was unreasonable."[50]

The Court fully agrees with the Magistrate Judge's analysis. The probative value of the photograph (later learned to have been taken nearly six months before the murders) is insufficient to overcome the strong evidence of Petitioner's guilt. In addition to the evidence cited by the Magistrate Judge, it was established at trial that Wilson was in the apartment at the time of the shooting and during his closing argument, counsel for Petitioner argued that Wilson could have been the shooter.[51] Thus, the argument that drove Petitioner's desire for admission (that Wilson was the shooter) was before the jury. The photograph, even if admitted, would not have bolstered this argument enough to warrant a finding that the state court's conclusion on the issue was unreasonable.

In his Objections, Petitioner suggests that the Pennsylvania Supreme Court engaged in the improper analysis, "conflate[ing] Petitioner's due process, right-to-present-a-defense-claim [], with this claim of ineffectiveness."[52] According to Petitioner, the "correct analysis would have been whether had counsel asked the proper question of the witness, the photograph would have been admitted. Then, the question would be whether the admitted photograph would have led to a reasonable probability of a different outcome."[53] Using the analysis as articulated by Petitioner, the result is the same. If counsel had questioned the witness about the date of the photograph and determined that it was taken five to six months before the murders, the trial

---

[50] Id.

[51] 10/19/2013 Trial Tr. 44-48; 10/20/2013 Trial Tr. 35-36.

[52] Doc. No. 51 at 8.

[53] Id. at 8-9.

15

judge may still have deemed the photo inadmissible given the significant time that elapsed between the date the photo was taken and the crime at issue. Further, in light of the testimony of Marc Sisco that Petitioner shot him and even assuming that the photo had been admitted, there is no reasonable probability that it would have affected the outcome of the trial. Thus, Petitioner's argument is unavailing.[54]

### 3. The Brady Claim

Petitioner's final objection concerns the prosecutor's "suppression" of evidence which would reveal the date of the photograph. According to Petitioner, "[b]y failing to provide Petitioner's counsel with the date that the photograph was taken, the prosecutor disregarded his obligation to disclose exculpatory information throughout the trial, post-verdict proceedings, and upon direct appeal to this Court."[55]

In Brady v. Maryland,[56] the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."[57] "[T]o establish a Brady violation requiring relief, a defendant must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was

---

[54] Petitioner also suggests that the Court should not apply a deferential standard of review of this claim, because the "Pennsylvania Supreme Court addressed a different question" and therefore, did not review the claim on its merits. This argument is unavailing for two reasons. First, Petitioner's argument fails because the state court did review Petitioner's claim on its merits. See Collins, 888 A.2d at 577. Second, even applying a less deferential standard, the Court reaches the same conclusion: counsel was not ineffective.

[55] Doc. No. 33-3 at 27.

[56] 373 U.S. 83 (1963).

[57] Id. at 87.

16

favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material."[58]

"Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"[59] However, this standard "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal."[60] The "touchstone of materiality is a 'reasonable probability' of a different result."[61] "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"[62]

Here, for the reasons state above, the Court cannot find that there is a reasonable probability that evidence of the date of the photograph, if admitted, would have produced a different result. Thus, even if the evidence was withheld, it is not material so as to undermine confidence in the outcome of the trial.[63] Petitioner has not shown that a Brady violation occurred

---

[58] United States v. Walker, 657 F.3d 160, 185 (3d Cir. 2011) cert. denied, 132 S. Ct. 1122 (2012) (quotation and citation omitted) (alteration in original); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

[59] United States v. Friedman, 658 F.3d 342, 357 (3d Cir. 2011) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

[60] Kyles v. Whitley, 514 U.S. 419, 434 (1995).

[61] Id. (quoting Bagley, 473 U.S. at 682).

[62] Id. (quoting Bagley, 473 U.S. at 678).

[63] Since the Court finds that even if the evidence was suppressed there is no Brady violation because the evidence is not material, there is no basis for an evidentiary hearing to determine when the prosecution learned this information. Additionally, the Court notes, as the state court did, defense counsel had equal access to the information and had the opportunity to question Marc Sisco about the date of the photograph during cross

and the state court's conclusion consistent with this finding was not unreasonable. Consequently, this claim does not provide a basis for granting the Petition.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Petitioner's Motion to Amend, *nunc pro tunc*. However, the Second Amended Petition does not assert a claim justifying the grant of habeas relief. Accordingly, the Court will approve and adopt the R&R over Petitioner's Objections, and deny the Petition. Since Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.[64]

An appropriate Order follows.

---

examination at trial; he did not do so. Collins, 888 A.2d at 578. Petitioner's ineffective assistance of counsel claim shows this and has the effect of undermining his Brady claim.

[64] See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000). Pursuant to Local Appellate Rule 22.2, at the time of a final order denying a habeas petition, a district judge is required to determine whether a certificate of appealability ("COA") should issue. A COA should not be issued unless "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack, 529 U.S. at 484 (internal quotation marks omitted).